1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CALVARY CHAPEL BIBLE                    )    Case No. 5:16-cv-00259 PSG (DTB)
FELLOWSHIP, a California Non-Profit     )
Religious Corporation,                  )    [PROPOSED] JUDGMENT
                                        )
            Plaintiff,                  )
                                        )
v.                                      )
                                        )
COUNTY OF RIVERSIDE,                    )
                                        )
            Defendant.                  )
_____)

Before the Court are Plaintiff Calvary Chapel Bible Fellowship's (CCBF) partial motion

for summary judgment as to its first, second and seventh causes of action, and Defendant County

of Riverside's (COUNTY) motion for summary judgment as to the entire complaint.

After oral argument on April 17, 2017, the Court issued a tentative ruling and ordered the

parties to submit simultaneous briefs in response to the tentative order and file cross-motions for

summary judgment on Plaintiff's third, fourth, fifth and sixth causes of action.

On August 18, 2017, after considering the moving, opposing and reply papers, as well as

arguments presented in the response briefs, the Court ordered the following:

• County of Riverside's motion for summary judgment as to the entire Complaint is

GRANTED in part and DENIED in part. The County's motion as to causes of action

one through six on statute of limitations, ripeness and standing grounds is DENIED.

The County's motion as to cause of action seven is GRANTED.

- CCBF's motion for partial summary judgment as to causes of action one, two and seven is DENIED. Pursuant to Fed. R. Civ. P. 56(f), the Court enters summary judgment on CCBF's first and second causes of action in favor of the County.

- The County's cross-motion for summary judgment as to causes of action three, four, fiveand six, is GRANTED.

- CCBF's cross-motion for summary judgment as to causes of action three, four, five and six, is DENIED.

Attached hereto as Exhibit A is a true and correct copy of the Court's Order dated August 18, 2017 (docket # 60).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is entered in favor of Defendant COUNTY OF RIVERSIDE and against CALVARY CHAPEL BIBLE FELLOWSHIP on all causes of action in this matter; that Plaintiff shall take nothing from Defendant COUNTY OF RIVERSIDE; and that Defendant COUNTY OF RIVERSIDE shall have their costs against Plaintiff CALVARY CHAPEL BIBLE FELLOWSHIP upon the timely filing of a bills of costs pursuant to Local Rule 54-3.

Dated: 12/5/17

By: _____
Philip S. Gutierrez
United States District Judge

2

[PROPOSED] JUDGMENT

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order GRANTING in part and DENYING in part the County's motion for summary judgment, DENYING Plaintiff's motion for partial summary judgment, GRANTING the County's cross-motion for summary judgment, and DENYING Plaintiff's cross-motion for summary judgment**

Before the Court are Plaintiff Calvary Chapel Bible Fellowship's partial motion for summary judgment as to its first, second and seventh causes of action (Dkt. # 29), and Defendant County of Riverside's motion for summary judgment as to the entire complaint (Dkt. # 28). After oral argument on April 17, 2017, the Court issued a tentative ruling and ordered the parties to submit simultaneous briefs in response to the tentative order and file cross-motions for summary judgment on Plaintiff's third, fourth, fifth and sixth causes of action. *See* Dkt. # 49. The response briefs and cross-motions are now before the Court. *See* Dkts. ## 51–54. After considering the moving, opposing and reply papers, as well as arguments presented in the response briefs, the Court GRANTS in part and DENIES in part the County's motion, DENIES Plaintiff's motion and cross-motion, and GRANTS the County's cross-motion.

## I. Background

This dispute concerns whether certain provisions of the County of Riverside's land use ordinance facially violate the Religious Land Use and Institutionalized Persons Act of 2000 by excluding religious assemblies and institutions from two zoning districts. The motions before the Court seek a determination on the merits of Plaintiff's seven causes of action, which allege that the challenged ordinance provisions facially violate the "equal terms," "nondiscrimination," and "unreasonable limitations" provisions of RLUIPA, as well as violate the First Amendment. In addition, Defendant challenges Plaintiff's suit on standing, ripeness, and statute of limitations grounds. In order to address all of the issues raised by the parties, the Court provides the following detailed background of this case.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

Plaintiff Calvary Chapel Bible Fellowship ("CCBF") is a non-denominational Christian church located in an area of Defendant County of Riverside ("County") known as "Temecula Wine Country." Dkt. # 1 ("Complaint" or "Compl.") ¶¶ 3, 8; *see also Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment* ("DSUF") ¶¶ 1–3. CCBF owns two adjacent parcels of land located in the Citrus/Vineyard Zone ("C/V Zone"), one of approximately 40 zoning classifications in the County. Dkt. # 40-1, *Plaintiff's Statement of Undisputed Facts* ("PSUF") ¶ 2; *see also Declaration of Clark Van Wick* ("Van Wick Decl.") ¶ 3; Dkt. # 40-3, *Declaration of Juan Perez in Support of County's Opposition to Plaintiff's MSJ* ("Perez Decl. 1") ¶ 2. The County administers all land use planning and zoning regulation through its Zoning Ordinance No. 348 ("Ordinance No. 348"). *See DSUF* ¶ 6; *Perez Decl. 1* ¶ 5.

After acquiring the first parcel in 1996, CCBF applied for and obtained a public use permit to operate as a church and to construct a sanctuary and classroom on its property. *Compl.* ¶ 20; *PSUF* ¶ 3. Pursuant to the ordinance provision in force at the time, churches, temples and other places of religious worship were permitted in the County, either as of right, with approval of a Plot Plan or with approval of a public use permit. Dkt. # 40-4 ("Perez Decl. 2"), Ex. H p.2. In the C/V Zone at the time, churches were allowed with a public use permit. *Id.*; *PSUF* ¶ 3; Dkt. # 30-1, Ex. 6. In September of 1999, shortly after CCBF began construction of its sanctuary and classroom, the County amended Ordinance No. 348 to eliminate the previously existing right of religious assemblies to locate in all zones by way of a public use permit. Dkt. #41-2, *Declaration of Michael Naggar* ("Naggar Decl.") ¶ 17; Dkt. 30-1, Ex. 7. Instead, religious use was limited to designated zones, no longer including the C/V Zone. *Naggar Decl.* ¶ 17. Because religious uses in the C/V Zone are no longer permitted, CCBF has been in non-conforming use ever since.[1] *PSUF* ¶ 5.

Between 1999 and 2009, Ordinance No. 348 was amended on several occasions to further specify the permitted uses in the C/V Zone. *See Compl.* ¶¶ 27–28. Specifically, Sections 14.71–74 of Ordinance No. 348 govern the land use and zoning regulation of the C/V Zone and are the relevant provisions at issue in this case. *See Perez Decl. 1*, Ex. A ("C/V Zone"). Pursuant to Section 14.71, the C/V Zone classification is intended to "encourage agricultural cultivation, vineyards, and wineries, that would preserve the rural lifestyle, wine-making atmosphere and long term viability of the wine-industry." *Id.* § 14.71. To that end, uses permitted under section 14.73 include one-family dwellings; vineyards and groves; field crops and orchards; vegetable, flower and herb gardens; horse, cattle, sheep and other farm stock; and

---

[1] CCBF is, however, engaged in legal non-conforming use, which is permissible under Section 18.8 of Ordinance No. 348: "[A]ny nonconforming structure or use may be continued and maintained for the periods of time hereinafter set forth, provided there are no structural alterations except as hereinafter allowed." *Perez Decl. 1* ¶ 15; *see also id.*, Ex. C. § 18.8.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

outside storage units used in connection with a farm. *Id.* at § 14.73(A). Other uses that may be permitted upon approval of a Plot Plan include additional dwelling units; public utility facilities, eighteen-hole golf courses; child day care centers, and limited incidental commercial uses that are in conjunction with an on-site vineyard and minimum gross acreage, such as special occasion facilities, bed and breakfasts, country inns, hotels, restaurants, spas, cooking schools, wine sampling rooms, retail wine sale stores, and agricultural product stands. *Id.* at § 14.73(B).

In 2009, allegedly unaware of the County's actions to exclude religious uses in the C/V Zone, CCBF purchased an adjacent unimproved parcel in order to allow for the expansion of its growing church. *Compl.* ¶ 30; *Van Wick Decl.* ¶ 18. In March of 2011, CCBF submitted a Plot Plan to the County containing its proposed expansion which includes a larger sanctuary, a special occasion facility, an open air wedding facility, a church administration building and a single family residence on the vacant parcel. *DSUF* ¶¶ 8–9; *Van Wick Decl.* ¶ 18. CCBF engaged in discussions with the County regarding its proposed expansion and requested that the County amend its ordinance in order to permit religious land use within the C/V Zone. *Id.* ¶ 22. To that end, in March of 2010, the County Board of Supervisors approved a draft Ordinance No. 348.4702 to permit churches and other places of religious worship in the C/V Zone. *Id.*; *see also* Dkt. # 41-5, Ex. 9 ¶ 3.46. Over the next several months, the draft ordinance was tentatively approved, but ultimately removed from the County Planning Commission's agenda in November of 2010. Dkt. # 41-2, *Naggar Decl.* ¶¶ 23–24; *see also* Dkt. # 41-5, Ex. 14, 19. Instead, on November 9, 2010, the County Board of Supervisors approved Ordinance No. 348.4713 which provided for the County Planning Director to permit uses that were substantially the same in character and intensity as uses already permitted within a County zone. *Naggar Decl.* ¶ 25; Dkt. # 41-5, Ex. 21. Pursuant to this ordinance, CCBF sent a letter to the County Planning Director requesting a finding that CCBF's proposed expansion of its church is the same in character and intensity as other projects already permitted in the C/V Zone. *Naggar Decl.* ¶ 26; Dkt. #41-5, Ex. 24. In January of 2011, the Planning Director sent a response, informing CCBF that a determination had been made that its proposed project was the same in character and intensity as other projects and that it must submit a Plot Plan application to the Planning Department in order to proceed with its expansion. *Naggar Decl.* ¶ 27; Dkt. #45-1, Ex. 15. Two months after CCBF submitted its Plot Plan application, a group known as "Protect Wine Country" filed a lawsuit against the County challenging the validity of Ordinance No. 348.4713. *Naggar Decl.* ¶ 29. Having found that the County had failed to comply with environmental and procedural laws in enacting the ordinance, the Superior Court of Riverside County found in favor of Protect Wine Country, thereby causing CCBF's Plot Plan application to be negated. *Id.*

Meanwhile, the County, in partnership with the Temecula Valley Wine Association, initiated the planning and development of a plan known as the Wine Country Community Plan ("WCCP") intended to cover a project area of approximately 18,000 acres that encompasses

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

various zoning classifications, including the C/V Zone. *Id.* ¶ 20; *see also Perez Decl.* 2, Ex. L ("Resolution No. 2014-040") p.5. As established in Resolution No. 2014-040, the WCCP amends the County General Plan to create new Wine Country Zones in the area encompassed by the plan. *See Resolution No. 2014-040* p.2.

While the County was preparing the WCCP, CCBF made numerous requests for the County to add religious assemblies as permitted uses in the proposed WCCP. *Nagger Decl.* ¶ 31. After several hearings took place in June, July, August and December of 2012 on the question of amending the WCCP to allow religious assemblies as permitted uses with an entitlement, the Planning Commission voted to recommend to the Board of Supervisors to "carve out" CCBF's two parcels from the WCCP, leaving them geographically surrounded but excluded from the WCCP. *Id.* ¶ 42; *Perez Decl.*, Ex. L p.3. At a September 24, 2013 hearing before the Board of Supervisors, Supervisor Jeff Stone remarked that by keeping CCBF in the C/V Zone, "we can then come back and amend that plan to allow a church and we can be in compliance with RLUIPA and they will be I think a[n] agricultural asset to the county." *See* Dkt. # 41-23, Ex. 18, p. 126.

On March 11, 2014, the County approved the WCCP. *Id.*; *see Resolution 2014-040.* CCBF therefore remains subject to the requirements of the C/V Zone while the surrounding properties are now regulated by the WCCP, as provided in Sections 14.91–99 of Ordinance No. 348. *Id.* at 3; *Perez Decl. 1*, Ex. B ("Wine Country Zone"). The Wine Country Zone provisions, and specifically sections 14.91–14.94 which are at issue in this case, are substantially similar to the C/V Zone provisions, confirming the same intent of encouraging agricultural cultivation, vineyards, and wineries, and allowing the same permitted uses of dwellings, vineyards, crop fields, and specified facilities related to the production and selling of wine. *Compare Ordinance No. 348 §§ 14.71-74 with 14.91–94.*

After the County adopted the WCCP, Protect Wine Country filed another lawsuit against the County alleging that the "carve-out" of CCBF's parcels from the WCCP constituted illegal spot zoning. *Naggar Decl.* ¶ 47; *see also Protect Wine Country v. County of Riverside*, RIC1401719. The case concluded via settlement agreement on October 29, 2015, whereby the County agreed "that all amendments to the Citrus/Vineyard (C/V) Zone incorporating revisions to the permitted uses or development standards shall also be made to the [Wine Country] zones." *Id.* ¶ 48; *see also* Dkt. #41-5, Ex. 17 ("Settlement Agreement") ¶ 2. The County further agreed to "adopt a policy that requires interpretation of the planting requirements in the Citrus/Vineyard (C/V) Zone to be the same as the planting requirements in the [WCCP]." *See Settlement Agreement* ¶ 1.

In the midst of all these events, CCBF submitted to the County an application for a text amendment to permit churches in the C/V Zone along with a Plot Plan application to develop its

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

vacant parcel. *Naggar Decl.* ¶ 33; *Perez Decl.* ¶ 6. Although initially filed in May of 2012, both applications are still pending because environmental review under the California Environmental Quality Act is ongoing. *Perez Decl.* ¶ 6.

CCBF filed suit against the County on February 10, 2016, asserting six claims for violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), as well as a claim for violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983. *See Complaint.* CCBF alleges that the C/V Zone and the Wine Country Zone provisions facially violate (1) the equal terms provision of RLUIPA (first and second causes of action); (2) the nondiscrimination provision of RLUIPA (third and fourth causes of action); and (3) the exclusion provision of RLUIPA (fifth and sixth causes of action). *Id.* CCBF additionally asserts that, on their face, Sections 18.28 and 18.30 of Ordinance No. 348 grant unbridled discretion to County officials to determine land use affecting CCBF's religious speech, in violation of the First Amendment (seventh cause of action).

CCBF filed a motion for partial summary judgment as to the first, second and seventh causes of action. Dkt. # 29 ("CCBF Mot."). The County filed a motion for summary judgment as to the entire complaint on grounds of untimeliness, ripeness and standing. Dkt. # 28 (" County Mot."). Lastly, the parties have filed cross-motions for summary judgment as to the third, fourth, fifth, and sixth causes of action. Dkt. # 51 ('County Corss-Mot."); Dkt. # 53 ("CCBF Cross-Mot.").

## II. Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|----------|---------------------|------|-----------------|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|-------|--------------------------------------------------------|

## III.     Discussion

The Court first addresses the County's motion for summary judgment because it argues that CCBF's claims fail as a matter of law on statute of limitations, ripeness and Article III standing grounds. Because the Court finds that these threshold requirements only bar CCBF's seventh cause of action, the Court then turns to CCBF's motion for partial summary judgment on its first and second causes of action, and the parties' cross-motions as to the third, fourth, fifth and sixth causes of action.

### A.     County's Motion for Summary Judgment

The County brings its motion for summary judgment on grounds that (1) CCBF's suit is barred by the statute of limitations; (2) CCBF's action is not yet ripe; and (3) CCBF lacks Article III standing as to its second, fourth, sixth and seventh causes of action. *See generally County Mot.* The Court addresses each argument in turn.

#### a.     *Statute of Limitations*

While RLUIPA does not contain its own statute of limitations period, the Ninth Circuit has confirmed that RLUIPA claims, like other civil claims "arising under an Act of Congress enacted after [December 1, 1990]," have a four-year period of limitations. *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). Accordingly, CCBF's first six causes of action are subject to a four-year statute of limitations. As to CCBF's seventh cause of action arising under 42 U.S.C. § 1983, the parties agree that federal courts look to the law of the state in which the cause of action arose and apply the state law of limitations governing an analogous cause of action. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The parties also agree that the analogous cause of action in this case is California's personal injury action, which has a two-year statute of limitations. *See Maldonado v. Harris*, 370 F.3d 945, 954–55 (9th Cir. 2004).

The parties disagree, however, on when the statute of limitations on CCBF's claims began to run. The County argues that regardless of the statute of limitations applied, CCBF's claims are barred because the ordinance provisions being challenged in this case were adopted more than four years prior to the filing of the complaint. *See County Mot.* 4; Dkt. # 43 ("County Rep.") 1–3. The County thus appears to argue that CCBF's claims accrued on the date the ordinance was enacted or amended, causing the statute of limitations to begin to run. *See id.* Citing no authority for the proposition that a law is immune from facial challenges due to the

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|----------|---------------------|------|-----------------|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |
|-------|--------------------------------------------------------|--|--|

passage of time after enactment,[1] the County misconstrues the nature of CCBF's claims. CCBF is not asserting an injury solely from the enactment of Ordinance No. 348, but claims that all of its causes of action demonstrate a continuing violation because the ordinance remains in effect. Dkt. # 41 ("CCBF Opp.") 6. The "continuing violation" doctrine holds that when a plaintiff is suffering not a discrete, particular injury, but an ongoing violation of rights, the plaintiff may file suit at any time within the limitations period after the most recent incident. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007); *see also Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir. 1989) ("To establish a continuing violation [a plaintiff has] to show a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.") (internal citations omitted). Here, despite the various attempts over the past several years to address the inclusion of religious assemblies in the C/V Zone, Ordinance No. 348 remains unaltered and in effect. If a violation of RLUIPA does in fact exist on the face of Ordinance No. 348, "then each day that the invalid [ordinance] remaine[s] in effect, it inflict[s] a continuing and accumulating harm" on CCBF. *See Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (holding that an ordinance barring plaintiff from using certain roads on an ongoing basis actively deprived plaintiff of its asserted constitutional rights every day that the ordinance remained in effect).

This is equally applicable to CCBF's seventh cause of action asserting violations of its right to free speech under the First Amendment. *See Compl.* ¶¶ 109–14. In *3570 East Foothill Blvd., Inc. v City of Pasadena*, the Court specifically held that "a statute that, on its face, violates the First Amendment's guarantee of free speech inflicts a continuing harm. . . . This harm continues until the statute is either repealed or invalidated." 912 F. Supp. 1266, 1278 (C.D. Cal. 1996). The Court therefore held that the plaintiff was not barred by the statute of limitations from bringing a facial challenge to the law in question. *Id.* Similarly, in *Santa Fe Springs Realty Corp. v. City of Westminster*, the Court refused to hold that the statute of limitations prohibited a facial challenge to a city ordinance, noting that "[a] First Amendment challenge . . . involves a continuing injury based upon the statute's on-going effect on protected speech." 906 F. Supp. 1341, 1364–65 (C.D. Cal. 1995).

Moreover, the doctrine of equitable estoppel precludes the County from asserting a statute of limitations defense. Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is "active conduct by a defendant, above and beyond the wrongdoing

---

[1] Indeed, such a proposition would be contrary to well-established landmark cases that struck down decade-old laws as facially unconstitutional. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003) (bringing a facial challenge in 1998 to a law enacted more than twenty years earlier); *see also Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment.").

Case 5:16-cv-00259-PSG-DTB  Document 60  Filed 08/18/17  Page 8 of 28  Page ID #:2398

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006). Here, the undisputed facts demonstrate that between 2009 and 2015, the County and CCBF engaged in numerous discussions over the exclusion of religious assemblies in the C/V Zone and WCCP, many of which gave CCBF assurances that religious use would be added to the ordinance, thus precluding the necessity of filing suit. For example, in January of 2011, pursuant to a newly adopted ordinance that would approve a church as a non-designated, but permissible use, the County Planning Director made a determination that CCBF's proposed expansion project was the same in character and intensity as other projects in the C/V Zone and therefore permissible under the new ordinance. *Naggar Decl.* ¶ 27; Dkt. #45-1, Exs. 8, 15. CCBF then submitted a Plot Plan in March of 2011. *Naggar Decl.* ¶ 28. One year later, however, in March of 2012, the Riverside County Superior Court invalidated the ordinance, thereby negating CCBF's Plot Plan. After continued demands by CCBF to amend the ordinance to permit religious use, CCBF filed an application for a text amendment to permit churches in the C/V Zone. *Naggar Decl.* ¶ 33–34, 43. Further, at a County Board of Supervisors hearing that took place on September 24, 2013, Supervisor Stone explained that carving CCBF out of the WCCP and thereby keeping it the C/V Zone alone would allow the County to "then come back and amend the plan to allow a church." *Naggar Decl.* 41; Ex. 18, p. 126. This carve-out, however, was challenged as impermissible spot zoning in yet another lawsuit against the County surrounding its treatment of CCBF's parcels. The case concluded in a settlement agreement in October of 2015, whereby the County agreed that all amendments to the C/V Zone must also apply to the Wine Country Zones, which CCBF contends represents a departure from the previous representations that the County will amend the C/V Zone alone to permit religious use. *See Settlement Agreement*, p.2, ¶ 2.

Drawing all inferences in favor of CCBF, as it must do in this motion, the Court finds that the undisputed facts demonstrate CCBF did not file suit at an earlier time due to reliance on the County's assurances that its concerns regarding religious use in the C/V Zone would be addressed. *See Atkins v. Union Pacific R. Co.*, 685 F.2d 1146, 1149 (9th Cir. 1982) ("[C]onduct or representations by the defendant[]which tend to 'lull (the plaintiff) into a false sense of security,' can estop the defendant from raising the statute of limitations.") (quoting *Glus v. Brooklyn Eastern Terminal*, 359 U.S. 231, 232-33, (1959)). The Court thus finds that the doctrine of equitable estoppel provides additional grounds for barring the County's statute of limitations defense.

The County's motion for summary judgment on grounds that the statute of limitations bars CCBF's claims is therefore denied.

    *b. Ripeness*

CV-90 (10/08)                     CIVIL MINUTES - GENERAL                     Page 8 of 28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | |

The County next argues that CCBF's claims are not ripe for judicial review. *County Mot.* 5. "[R]ipeness is peculiarly a question of timing, designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.2000) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)) (internal quotation marks omitted).

Relying on the landmark takings case, *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the County argues that CCBF's claims are not ripe for judicial review because no final action has been taken on CCBF's pending text amendment and Plot Plan application. *See County Mot.* 5.

In *Williamson County*, the Supreme Court held that Fifth Amendment regulatory takings claims are not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. at 186. Although the ripeness paradigm in *Williamson County* was originally developed in the context of a regulatory takings challenge, the Circuit Courts, including the Ninth Circuit, have applied the final decision prong of the *Williamson County* analysis to land use disputes involving more than just takings claims, including claims brought under RLUIPA. *See Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011) ("All of the circuits to address this issue have applied the final decision requirement to RLUIPA claims, as well as to related First Amendment-based § 1983 claims. . . .").

Fatal to the County's argument, however, is that here, CCBF asserts facial challenges to the validity of Ordinance No. 348 under RLUIPA and the First Amendment. The Supreme Court has held *Williamson County* to be inapplicable to facial challenges. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("While ... a claim that the ordinance effects a regulatory taking as applied to petitioners' property would be unripe for [failure to satisfy *Williamson County*], petitioners mount a facial challenge to the ordinance.")). The Ninth Circuit is in accordance, holding facial challenges exempt from the final-decision requirement of the *Williamson County* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003). Therefore, the final-decision rule does not present a barrier to adjudicating CCBF's causes of action, all of which assert facial challenges to the ordinance provisions in question. Summary judgment on these grounds is therefore denied.

     *c.*    *Standing*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

Lastly, the Court addresses the County's argument that CCBF lacks standing to maintain its second, fourth, sixth and seventh causes of action. *County Mot.* 6, 8–14. CCBF's second, fourth and sixth causes of action assert that the Wine Country Zone provisions of Ordinance No. 348 (sections 14.91–94) violate the equal terms, nondiscrimination and exclusion provisions of RLUIPA, respectively. The Court first addresses CCBF's standing as to these causes of action before turning to CCBF's standing as to its seventh cause of action under the First Amendment.

Article III requires a plaintiff asserting claims in federal court to have suffered an "injury in fact" that is fairly traceable to the conduct of a named defendant and that will be "likely" "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The County contends that these threshold requirements are not met as to CCBF's facial challenge to the validity of the Wine Country Zone provisions because CCBF's parcels are not located in the Wine Country Zones zones. *County Mot.* 6.

In response, CCBF contends that it has standing to challenge the provision of the Wine Country Zones because its parcels in the C/V Zone are inextricably intertwined with the Wine Country Zones. *County Opp.* 12. CCBF argues that, on account of the Settlement Agreement executed between Protect Wine Country and the County in October of 2015, the County is prohibited from making any amendments to the C/V Zone without also amending the Wine Country Zones. *Id.; see also Settlement Agreement.* Consequently, any proposed amendment to allow religious assemblies in the C/V Zone must now be equally applied to the Wine Country Zones as well. CCBF thus asserts an injury in fact because it cannot use its property for religious use unless the County amends both the C/V Zone and the Wine Country Zone to permit religious assemblies. *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1304 (11th Cir. 2006) (holding that a zoning restriction affecting property use constitutes an injury in fact). The remaining two standing requirements are also present. CCBF's injury is traceable to the conduct of the County for excluding religious use from the WCCP and agreeing to prohibit any amendment to the C/V Zone without also amending the Wine Country Zones. Finally, the injury would be redressed by a ruling in CCBF's favor. *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) ("A plaintiff meets the redressability requirement for constitutional standing if it is likely, although not certain, that his injury can be redressed by a favorable decision."). Therefore, CCBF has standing to assert violations of RLUIPA against the Wine Country Zones provisions in its second, fourth and sixth causes of action. The County's motion for summary judgment on these grounds is denied.

Next, the County contends that CCBF also lacks standing to maintain its seventh cause of action for violations of the First Amendment under 42 U.S.C. § 1983. *County Mot.* 8. There, CCBF asserts a facial challenge to two sections of Ordinance No. 348 related to Conditional Use Permits ("§ 18.28") and Plot Plans ("§ 18.30"), on grounds that they grant "unbridled discretion

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

in land use decisions affecting religious speech." *County Mot.* 9; *Compl.* ¶ 114. In its opposition brief, CCBF concedes that it lacks standing to challenge the validity of the Conditional Use Permit under § 18.28 because the section does not apply to churches, *see County Opp.* 13, so the Court only addresses CCBF's standing as to Plot Plans under § 18.30.

Section 18.30(C) provides that no Plot Plan shall be approved unless "[t]he overall development of the land shall be designed for the protection of the public health, safety and general welfare; to conform to the logical development of the land and to be compatible with the present and future logical development of the surrounding property." *Perez. Decl.* Ex. G. § 18.30(C).

The Supreme Court and the Ninth Circuit have repeatedly allowed facial attacks premised on the grant of unbridled discretion to a licensing official. *Freedman v. Maryland*, 380 U.S. 51, 56 (1965) ("[I]t is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license."); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020 (9th Cir. 2009) (allowing unbridled discretion claim to proceed as facial challenge). However, a plaintiff must meet two requirements to bring a facial unbridled discretion challenge under the First Amendment. "First, a plaintiff must satisfy the standing requirements of Article III by showing that the challenged provision or provisions apply to its conduct." *Kaahumanu v. Hawaii*, 682 F.3d 789, 802 (9th Cir. 2012). "Second, the challenged [regulation granting discretion] 'must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.'" *Id.* (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988) ("[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.").

Here, CCBF lacks standing to bring a facial challenge based on unbridled discretion because by its terms, Ordinance No. 348 does not seek to regulate expressive conduct nor do the criteria outlined in § 18.30 grant County officials discretion to discriminate based on content or viewpoint of speech. Rather, § 18.30 seeks to regulate "development of the land" in an area zoned for agricultural cultivation and vineyards. In the absence of a regulation's "close enough nexus to expression," CCBF may not "challenge as censorship any law involving discretion to which it is subject." *City of Lakewood*, 486 U.S. at 759. In *Southern Oregon Barter Fair v. Jackson County, Oregon*, the Ninth Circuit explained:

> "[L]aws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

of ongoing expression or the words about to be spoken, such as laws requiring building permits, pose little danger of censorship and may therefore be challenged only by the usual as-applied method. *In other words, a facial challenge is proper only if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling.*"

372 F.3d 1128, 1135 (9th Cir. 2004) (emphasis added). As no expressive activity is implicated in Ordinance No. 348, CCBF lacks standing to bring a facial challenge to its validity under the First Amendment. The County's motion for summary judgment on CCBF's seventh cause of action for lack of standing is therefore granted.

## B. CCBF's Motion for Partial Summary Judgment as to the First, Second and Seventh Causes of Action

CCBF moves for partial summary judgment on its first, second and seventh causes of action. *CCBF Mot.* Having determined that CCBF's lack of standing precludes its seventh cause of action, CCBF's motion for summary judgment on that cause of action is moot.

### 1. *"Equal Terms" under RLUIPA (First and Second Cause of Action)*

RLUIPA has four separate provisions limiting government regulation of land use: (1) the substantial burden provision, (2) the equal terms provision, (3) the nondiscrimination provision, and (4) the exclusions provision. 42 U.S.C. § 2000cc(b); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011). CCBF moves for summary judgment on its first two causes of action, asserting that the C/V Zone and the Wine Country Zones provisions of Ordinance No. 348 violate the equal terms provisions of RLUIPA. *See CCBF Mot.*

The statutory text of the equal terms provision provides:

"No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."

§ 2000cc(b)(1). Under RLUIPA, the government bears the burden of persuasion once a religious plaintiff establishes a prima facie case of a violation. § 2000cc–2(b) ("If a plaintiff produces prima facie evidence to support a claim alleging a violation of . . . section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim [.]"). The Ninth Circuit has described the elements of a prima facie case under the equal terms provision as

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

follows: "(1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution," (4) that is "on less than equal terms with a nonreligious assembly or institution." *Centro Familiar*, 651 F.3d at 1170–71. "Under the equal terms provision, analysis should focus on what 'equal' means in the context." *Id.* at 1172. The equal terms provision is violated "only when a church is treated on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria." *Id.* at 1173; *see also River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010) ("If a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision.").

Here, the parties do not dispute that the challenged ordinances are "land use regulation[s]," *see* § 2000cc–5(5) (defining "land use regulation" as "a zoning or land-marking law, or the application of such a law, that limits or restricts a claimant's use or development of land ..."); that the County is a "government" within the meaning of the statute, *see* § 2000cc–5(4) (defining "government" to include, inter alia, "a State, county, municipality, or other governmental entity created under the authority of a State"); or that CCBF is a "religious assembly or institution." *See* Dkt. # 40 ("County Opp.") 9. Thus, the dispositive issue is whether the C/V Zone and the Wine Country Zones treat religious entities "on less than equal terms with a nonreligious assembly or institution." § 2000cc(b)(1). Because the C/V Zone and Wine Country Zones are substantially similar for purposes of determining whether they treat religious and nonreligious entities unequally, the Court considers them together. *See CCBF Mot.* 12; *County Opp.* 23. Furthermore, because CCBF is bringing a facial challenge to these ordinances, the Court "considers only the text of the measure itself, not its application to the particular circumstances of an individual." *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1084 (1995); *Henderson v. JPMorgan Chase Bank*, CV 11-4328 PSG (PLAx), 2012 WL 12886831, *8 (C.D. Cal. May 30, 2012).

In its supplemental brief on the matter, CCBF explains that it is challenging the ordinance provisions "for failing to include religious assemblies as permissible uses." Dkt. # 54 ("CCBF's Supp. Brief") 2. A permissible use is use that is allowed in the zones only upon obtaining a Plot Plan pursuant to § 18.30. *See C/V Zone* § 14.73.B; *Wine Country Zones* § 14.92.B. Drawing upon the language of these provisions and pointing to the deposition of Phayvanh Nanthavongdouangay, the principal planner for the County Planning Department, CCBF states that the following uses are permissible: "indoor and outdoor special occasion facilities, real estate training seminars, golf courses, child day care, centers, conference centers, opera houses, auditoriums, dance halls, wineries, tasting rooms, wine clubs, residences, religious and nonreligious wedding services, and non-profit charity events." *CCBF Supp. Brief* at 7; *C/V Zone* § 14.73.B; *Wine Country Zone* § 14.92.B; *see also* Dkt. 30-6, *Deposition of Phayvanh*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

*Nanthavongdouangay* ("Phayvanh Depo.") pp. 91–93. CCBF contends that because it is not included in the list of permissible uses, applying for a Plot Plan is not an option for a church as it is for these other enumerated non-religious assemblies. *CCBF Supp. Brief* 4. CCBF thus argues that "since the County allows similarly situated secular assemblies by way of a plot plan, it should do the same for religious assemblies." *Id.* at 2.

While the Court agrees that religious assemblies should be permitted by way of a Plot Plan if similarly situated secular assemblies have that right, CCBF has not shown that religious assemblies are in fact excluded from permissible uses. As a threshold matter, the Court first notes that the only permissible uses expressly listed in the relevant provisions are additional one-family dwellings, public utility facilities, bed and breakfast inns, country inns and hotels, day spas, cooking schools in conjunction with inns or hotels, wine sampling rooms, retail wine sale and/or gift sale, restaurants, child day care centers, 18-hole golf courses, and "special occasion facilities." *See C/V Zone* § 14.73.B; *Wine Country Zones* § 14.92.B. The other uses enumerated by CCBF in its brief, such as auditoriums, opera houses, dance halls, and other places of public assembly are not expressly listed in the text of the ordinance, but rather derive from the County's planner's explanation of what may qualify as a "special occasion facility" for purposes of a Plot Plan application, as evidenced by the deposition of County planner Phayvanh Nanthavongdouangay:

> Q: So for purposes of the Wine Country Zones and the Citrus/Vineyard Zones, special occasion facilities include wedding facilities; right?
> A: Yes.
>
> . . .
>
> Q: If I wanted to put an auditorium in the Citrus/Vineyard Zone or the Wine Country Community Plan, would that be deemed a special occasion facility?
> A: An auditorium, yes.
> Q: What if I wanted to put an opera house? Would that be considered a special occasion facility?
> A: Yes.
>
> . . .
>
> Q: What if I wanted to put a recreational hall in the Citrus/Vineyard Zone or the Wine Country Zones, would that be considered a special occasion facility?
> A: Yes.
>
> . . .
>
> Q: A special occasion facility is not necessarily determined based upon whether it's for profit or nonprofit; right?
> A: Correct.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
| --- | --- | --- | --- |

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
| --- | --- |

*Phayvanh Depo.* 91–93.

Thus, to the extent CCBF is arguing that comparative secular assemblies such as auditoriums and recreation halls are "listed" in the ordinance as permissible uses, while religious assemblies are not, this argument is misleading. On the face of the ordinance provisions at issue, nothing indicates that a secular assembly such as an auditorium or a conference center is permissible, while a church is not. Instead, the evidence makes clear that secular places of public assembly are only permissible as "special occasion facilities," subject to a Plot Plan approval. More importantly, section 21.59 of Ordinance No. 348 defines places of public assembly as:

> "Any place designed for or used for congregation or gather[ing] of 20 or more persons in one room where such gathering is of a public nature, assembly hall, *church*, auditorium, recreational hall, pavilion, place of amusement, dance hall, opera house, motion picture theater, outdoor theater or theater, are included within this term."

Dkt. # 31, Ex. 18 § 21.59 (emphasis added). When asked about § 21.59 as it pertains to "special occasion facilities," the Phayvanh deposition provides:

> Q: Is it fair to say that if a place - - or if a use is designated as a public assembly under, you know, the 21.59, like we read before, that it would fall under a special occasion facility with the Citrus/Vineyard Zone or the Wine Country Community Plan by nature of the use?
> [A]: It would fall under the special occasion facility.

*Phayvanh Depo.* 93–94.

Section 21.59 expressly includes churches as a use designated as a public assembly, and because, according to the Phayvanh deposition, § 21.59 uses fall under the definition of a "special occasion facility" for purposes of permissible uses in the zones, CCBF's argument that churches are not allowed to seek a Plot Plan like other similarly situated assemblies is strongly undermined by the provisions of the ordinance. Namely, if special occasion facilities include places of public assembly, and places of public assembly include churches by definition in § 21.59, then by its terms, Ordinance No. 348 does not treat churches on less than equal terms than secular public assemblies.[1] Thus, CCBF's argument that "these permissible uses are similarly

---
[1] Moreover, the evidence shows that both religious and non-religious wedding services are permissible on Sunday mornings in these zones, and the County draws no distinction between for-profit and non-profit uses of special occasion facilities. *See* Dkt. # 30-6, *Deposition of Larry*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

situated to CCBF but CCBF has no available relief to seek a plot plan," *see CCBF Supp. Brief* at 7–8, has no support in the text of the ordinances or the submitted evidence.

The case relied on extensively by CCBF, *Vietnamese Buddhism Study Temple In Am. v. City of Garden Grove*, does not support its position. 460 F. Supp. 2d 1165 (C.D. Cal. 2006). In evaluating likelihood of success on the merits for purposes of a preliminary injunction, the Court found sufficient evidence of a prima facie claim alleging an equal terms violation. *Id.* at 1174. The Court determined that the ordinance in question on its face treats churches and religious centers on less then equal terms than private clubs and other secular assemblies, finding the following:

"[The ordinance] allows private clubs to operate without a CUP in the office professional zone, while religious assemblies are banned from that zone entirely. The [ordinance] also allows private clubs to operate without a CUP in the open space zone, while churches are subject to the CUP requirements. Indeed, private clubs and assemblies may operate, as a matter of right, in four of the City's ten zones, while churches are not permitted as a matter of right anywhere in Garden Grove."

*Id.* In contrast, all of the secular comparators listed by CCBF, such as auditoriums, opera houses, recreation halls, and other places of public assembly, are equally excluded from the zones,[1] and subject to the same Plot Plan and zoning criteria applicable to "special occasion facilities." *See River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 373–74 (7th Cir. 2010) (noting that "should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an easy victory if the municipality kept it out," however, an ordinance that created a commercial district that "excludes churches *along with* community centers, meeting halls, and libraries because these secular assemblies, like churches, do not generate significant taxable revenue or offer shopping opportunities" would not violate the equal terms provision ). CCBF points to no provision that distinguishes among the types of places of public assembly, religious or non-religious, as they pertain to permissible use, or show that religious assemblies may not be considered a special occasion facility. As emphasized throughout the depositions of County planners Phayvanh and Ross, the "special occasion facility" Plot Plan application imposes certain requirements, such as an on-site vineyard, a minimum gross parcel size, and use in conjunction with a dwelling or winery, but nothing in the record suggests that these criteria apply unequally to religious and non-religious assemblies. *Phayvanh Depo.* 95; *Ross Depo.* 104; *see also C/V Zone* § 14.74.B.4.

E. Ross ("Ross Depo.") at 96, 105; *Phayvanh Depo.* 89, 91, 93.
[1] As emphasized repeatedly by CCBF, all uses not expressly permitted are prohibited. *See Ordinance No. 348* § 3.3.

Case 5:16-cv-00259-PSG-DTB Document 60 Filed 08/18/17 Page 17 of 28 Page ID #:2407

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

CCBF has therefore not shown that, on their face, the C/V Zone and the Wine Country Zones provisions treat religious assemblies "on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria." *Centro Familiar*, 651 F.3d at 1173.

Accordingly, CCBF has failed to establish a prima facie case for violation of the equal terms provision under RLUIPA. Summary judgment is therefore not warranted. Under Federal Rules of Civil Procedure 56(f), "after giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f). *see also Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) ("[A] court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion."). Although the County did not move for summary judgment on the merits of CCBF's first and second causes of action, it is well established that a court may grant summary judgment sua sponte to a nonmoving party if, there are no genuine issues of material fact, the moving party has "be[en] given reasonable notice that the sufficiency of his or her claim will be in issue," and the nonmoving party is entitled to summary judgment as a matter of law. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (internal quotation marks and citation omitted). In the present case, there are no genuine disputes of material fact, and in moving for summary judgment, CCBF had reasonable notice that the question of whether the challenged ordinance provisions facially violate the equal terms provision of RLUIPA would be at issue. *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016) (granting summary judgment in favor of non-moving party where plaintiff, as the moving party, had reasonable notice that its claim would be at issue, and the claim failed as matter of law). Furthermore, CCBF was on notice that the Court may grant summary judgment in favor of the County through the tentative ruling issued on April 18, 2017, which provided as follows:

> "Because CCBF has failed to show that the challenged ordinances facially violate the equal terms provision of RLUIPA, CCBF's first and second causes of action fail as a matter of law. The Court therefore sua sponte enters summary judgment in favor of the County on CCBF's first and second causes of action."

*See* Dkt. # 49 at 15. In addition, by ordering the parties to submit briefs in response to the Court's tentative ruling, CCBF was provided with "a reasonable time to respond." Fed. R. Civ. P. 56(f). Having met all the requirements of Fed. R. Civ. P. 56(f), the Court therefore sua sponte enters summary judgment in favor of the County on CCBF's first and second causes of action.

C. Cross-motions for Summary Judgment as to CCBF's Third, Fourth, Fifth and Sixth Causes of Action

CV-90 (10/08)                    CIVIL MINUTES - GENERAL                    Page 17 of 28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

The parties cross-motions for summary judgment address CCBF's third and fourth causes of action, which are facial challenges to the C/V Zone and Wine Country Zone provisions under the nondiscrimination provision of RLUIPA, and fifth and sixth causes of action, which assert facial challenges to the two zoning provisions under the exclusion and unreasonable limitations provision of RLUIPA.

### 1.    "Nondiscrimination" under RLUIPA (Third and Fourth Caused of Action)

CCBF's third and fourth causes of action assert a facial challenge to the C/V Zone provisions (sections 14.71 through 14.74) and Wine Country Zones provisions (sections 14.91 through 14.94) under the "nondiscrimination" provision of RLUIPA, which provides that:

> "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination."

42 U.S.C. § 2000cc(b)(2). As with the equal terms provision, CCBF bears the initial burden of establishing a prima facie case, after which the County bears the burden of persuasion on the elements of the nondiscrimination claim. *Id.* § 2000cc–2(b); *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014). Although the Ninth Circuit has not yet addressed the analysis under the nondiscrimination provision of RLUIPA, other courts have looked to equal protection precedent in weighing such claims. *See id.*; *Bethel World Outreach Ministries*, 706 F.3d at 559; *Church of Scientology of Ga., Inc. v. City of Sandy Springs*, 843 F. Supp. 2d 1328, 1370 (N.D.Ga.2012); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1239 (11th Cir. 2004) (noting that "RLUIPA tailors the nondiscrimination prohibitions to land use regulations because Congress identified a significant encroachment on the core First and Fourteenth Amendment rights of religious observers").

Where, as here, a challenged ordinance is neutral on its face, a plaintiff seeking to establish a nondiscrimination claim under RLUIPA must put forth evidence of the government's "discriminatory intent" in approving the land use ordinance in question. *Chabad Lubavitch*, 768 F.3d 183, 198 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)); *Roman Catholic Bishop of Springfield v. City of Springfield*, 760 F. Supp. 2d 172, 191 (D. Mass. 2011), *aff'd in part, vacated in part*, 724 F.3d 78 (1st Cir. 2013) ("[T]he nondiscrimination provision sets a higher bar for plaintiffs by requiring evidence that the government action was motivated by ('on the basis of') religion."). Accordingly, courts assessing discriminatory intent consider "a multitude of factors, including the series of events leading up to a land use decision, the context in which the decision was made, whether the decision or decision-making process departed from established norms, statements made by the

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | |

decision-making body and community members, reports issued by the decision-making body, whether a discriminatory impact was foreseeable, and whether less discriminatory avenues were available." *Id.*; *see also Bethel World Outreach Ministries*, 706 F.3d at 559–60; *Church of Scientology*, 843 F. Supp. 2d at 1370–76.

CCBF asserts that the evidence establishes a "clear discriminatory intent in enacting the amendments to the C/V Zone and enacting the WCCP zone entirely," thus violating RLUIPA's nondiscrimination provision. *CCBF Cross-Mot.* 9. CCBF points to several pieces of evidence to support its showing that the County "enacted laws in a discriminatory manner." *Id.* at 8.

First, CCBF points to Ordinance No. 348.4702, a proposed amendment to the C/V Zone that would have allowed churches as a permitted use. *Id.*; *see* Dkt. # 41-5, pp. 235, 269. Based on the minutes of the County's Planning Commission meetings that took place in September and November of 2010, the proposed amendment was postponed once and then continued off calendar, and ultimately never adopted. *Id.*; Dkt. # 51-, *Declaration of Phayvanh Nanthavongdouangsy* ("Phayvanh Decl.") ¶ 4. CCBF asserts that "when local citizens became aware of CCBF's proposed expansion and voiced objections, the County of Riverside abruptly postponed and removed from the meeting agenda a proposed amendment that would have made churches a permissible use." *Id.* at 8. CCBF also states that it "faced a nontrivial amount of public anti-church sentiment" regarding its proposed expansions that influential vintners communicated to the County officials. *CCBF Cross-Mot.* 9. CCBF claims this sentiment is best evidenced by the lawsuit filed by Protect Wine Country against the County "to obstruct the County's plan to allow CCBF's project to go forward." *Id.* In further support, CCBF cites to a hearing transcript from a September 24, 2013 meeting of the County Board of Supervisors that addresses the creation of the WCCP. *See* Dkt. # 41-23 pp.225–29. Specifically, CCBF cites to Supervisor Jeff Stone's comments as evidence that the County wanted to keep CCBF in the C/V Zone and then amend the plan to permit churches. *Id.* CCBF claims this original intention to allow religious assemblies in the zone is greatly contrasted by the "severe animus" demonstrated in the October 2015 Settlement Agreement between Protect Wine Country and the County. *CCBF Cross-Mot.* 9. CCBF asserts that the County has "subjected CCBF to atypical restrictions" in the C/V Zone through the Settlement Agreement. *Id.* at 8–9; *see also Settlement Agreement.*

As to the Wine Country Zones, approved by Resolution No. 2014-040 in March of 2014, the only evidence of events leading up to its adoption is the formation of an ad hoc advisory committee in 2009 that did not include CCBF, and the resolution itself that provides background on the adoption of the WCCP and new zoning classifications. *See* Dkt. # 56 ("CCBF Cross-Opp.") 2; *CCBF Cross-Mot.* 9; *Resolution No. 2014-040*. CCBF asserts that Resolution No. 2014-040 shows the County's willingness to include religious assemblies in the zone based on the following provisions:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

- The Project, as approved, does not apply to the two parcels owned by the Calvary Church Bible Fellowship (Calvary). There was much testimony during the public hearings regarding Calvary's parcels. Concerns were voiced by existing residents, surrounding property owners and Calvary. Calvary intends to continue using its properties for religious exercise, and such use fails within [RLUIPA]. Not applying the Project to Calvary's parcels allows the County to ensure there is no violation of RLUIPA by maintaining existing land use policies and regulations to accommodate this religious exercise.

- Further, as Calvary's parcels will remain citrus/vineyard zoning, any future development on said parcels will require compliance with the 75% planting requirement. Therefore, future development on Calvary's parcels will be similar to development allowed under the Project and will further the County's goals of preserving the viticulture and rural lifestyle of the Project area.

*See Resolution No. 2014-040* at 162–62. CCBF argues that despite this willingness to accommodate CCBF, the County had "changed its intention based on vehement public opposition," as evidenced in the 2015 Settlement Agreement. *See CCBF Opp.* 2. Finally, CCBF argues that the creation of an ad hoc committee that included local vintners and equestrians, but not CCBF, to assist the County in the zoning process "departed from established norms in enacting the challenged ordinances." *CCBF Cross-Opp.* 2.

The County challenges the majority of CCBF's evidence on grounds that it does not concern the decisions leading up to the approval of the challenged portions of Ordinance No. 348, namely, those pertaining to the CV/Zone and the Wine Country Zones. *See* Dkt. #55 ("County Cross-Opp."). First, the County shows that removing churches from the list of permitted uses in the C/V Zone was approved in 1997, and the last amendment to the provisions governing the C/V Zone took place in 2009. *See id.* at 6, citing Dkt. # 30-8, Ex. 6, Dkt. # 30-9 Ex. 7, Dkt. # 53-2, XIV-12, 13, 16. The County thus argues that a facial challenge to the enactment of these ordinance provisions governing the C/V Zone cannot be based on evidence concerning events that took place after the final enacted amendment. *See County Cross-Opp.* 6. As noted above, courts look to the "series of events leading up to the land use decision . . ." in determining whether a government acted with discriminatory intent. *Roman Catholic Bishop of Springfield,* 760 F. Supp. 2d at 191. CCBF proffers no evidence concerning the events leading to the 1997 decision to remove churches as permitted uses or those leading to the last amendment to the C/V Zone in 2009.

For example, the proposed amendment to the C/V Zone that was considered but ultimately taken off calendar in 2010 post-dates the enactment of the C/V Zone and is not part of

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

the challenged provisions subject to CCBF's facial attack. *See* Dkt. # 41-5 pp.235, 269; *see e.g.,* *Grace Church of Roaring Fork Valley v. Bd. of Cty. Comm'rs of Pitkin Cty., Colorado,* 742 F. Supp. 2d 1156, 1165 (D. Colo. 2010) (finding evidence of "comments made by Commissioners during discussion of amendments to the Land Use Code in 2006, and comments made by Commissioners in 2008 in connection with the settlement agreement," irrelevant to the determination of whether the denial of the Church's application in May 2005 was motivated by religious animus). Even if it were, however, CCBF offers no evidence that the proposed amendment was removed from consideration due to religious animus. Although CCBF asserts that the County "abruptly" removed the proposed amendment from the calendar "when local citizens became aware of CCBF's proposed expansion and voiced objections," the Planning Commission minutes cited in support contain no statements bearing on intent, and make no mention of local citizens or any objections to the proposed expansion. *See* Dkt. # 41-5, pp. 235, 269. CCBF's similar assertion that the County originally had every intention to include religious assemblies in the zones, but abruptly changed its intention "upon vehement public opposition" to CCBF's proposed expansion, also has no support in the proffered evidence. While it is undisputed that Supervisor Jeff Stone stated in the September 24, 2013 meeting that by keeping CCBF in the C/V Zone, the County "can then come back and amend that plan to allow a church," no additional statements support CCBF's contention that there was vehement public opposition rising to the level of discriminatory intent. Dkt. # 41-23 p. 227. *See Roman Catholic Bishop of Springfield,* 760 F. Supp. 2d 172, 191 (rejecting plaintiff's argument that "Defendants yielded to the concerns of disgruntled parishioners" as evidence of discriminatory intent, finding, inter alia, that "Plaintiff presents no evidence to substantiate its claim that these considerations played a role in the Commission's decision to propose this Ordinance to the City Council."). In fact, the only public concerns mentioned by Supervisor Stone indicate "that the concern is not necessarily the church expanding their sanctuary," but rather "having a school on the new property they purchased." *Id.* at 226. Such statements undermine CCBF's assertion that the opposition to its expansion was grounded in religious animus.

As to the adoption of the WCCP plan and the Wine Country Zones, nothing in Resolution No. 2014-040 shows a discriminatory intent or religious bias; to the contrary, the cited provisions, quoted above, demonstrate a consideration for CCBF's religious use and the need to comply with RLUIPA. *See Resolution No. 2014-040,* pp. 162–63. Moreover, that concerns were voiced at a public hearing does not support an inference of bias towards the church, especially since "existing residents, surrounding property owners *and Calvary*" participated in the debate. *Id.* at 162. As to the formation of the ad hoc committee to assist with the WCCP which failed to include CCBF, CCBF hangs its argument on this constituting a departure from "established norms of enacting zoning laws." *CCBF Cross-Mot.* 2. The County however proffers evidence that it is in fact common for the County "to seek public opinion through surveys, workshops, and committees when contemplating certain land use actions." *County*

Case 5:16-cv-00259-PSG-DTB  Document 60  Filed 08/18/17  Page 22 of 28  Page ID #:2412

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

*Cross-Rep.* 7 n.7. In light of other evidence that CCBF actively participated in County decision-making processes over the years and had its concerns heard, *see e.g., Resolution No. 2014-040*, p. 162, the ad hoc committee alone is insufficient to show discriminatory intent in enacting the WCCP Plan and Wine Country Zones.

Moreover, CCBF appears to rely primarily on the 2015 Settlement Agreement as evidence of the "severe animus" towards religious institutions. *See CCBF Cross-Mot.* 9. However, not only does this agreement post-date any enactment of the C/V Zone and Wine Country Zones provisions at issue, but the nine-page document contains no statement that could be construed as demonstrating discriminatory intent or religious bias sufficient to support CCBF's argument. *See Settlement Agreement.* Even to the extent that the Settlement Agreement amends the C/V Zone[1] or imposes "atypical" restrictions on CCBF's use of its property, CCBF once more fails to show that "the County's agreement to enforce additional restrictions" is grounded in discriminatory intent or animus. Mere speculation as to the County's intent in settling the lawsuit and agreeing to the above provisions is insufficient to support CCBF's claim. Moreover, CCBF's contention that the Settlement Agreement is a departure from established norms is another conclusory statement without any factual support. CCBF offers no evidence that the County settling lawsuits in such a manner is a unique occurrence, and much less one that was conducted to obstruct religious institutions in the zone. More importantly, any application of a County ordinance or the particular impact of the Settlement Agreement on CCBF's property and proposed facility expansion is not a proper argument in the context of a facial challenge. CCBF has adamantly insisted in all its briefing that it is only bringing facial challenges, and therefore cannot now argue that the particular circumstances and requirements imposed on it by the County support its prima facie showing of a facial nondiscrimination violation. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174–75 (2d Cir. 2006) ("A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. [] An 'as-applied challenge,' on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right.") (citing *City of Lakewood*, 486 U.S. at 770 n. 11; *Wisconsin Right to Life, Inc. v. FEC*, 546 U.S. 410 (2006)).

---

[1] It is undisputed that the Settlement Agreement has not altered the text of the relevant provisions at issue. Whether the agreement nonetheless amends the C/V Zone provisions is an issue currently being litigated in state court in *Calvary Chapel Bible Fellowship v. County of Riverside*, Riverside Superior Court Case No. RIC 1601720. *See* Dkt. # 52-2, *Declaration of Melissa Cushman*, Exs. A and B. Because CCBF does not challenge the validity or meaning of the Settlement Agreement in this action, the Court will abstain from any determination as to whether the Settlement Agreement in fact amends the C/V Zone.

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 22 of 28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

Finally, the two cases CCBF cites extensively in support of its motion do not support CCBF's claim of discriminatory intent. *See CCBF Cross-Mot.* 7–8. First, in *United States v. County of Culpeper*, the question of nondiscrimination under RLUIPA was brought before the Court on a motion to dismiss, not a motion for summary judgment. *United States v. Cty. of Culpeper, Virginia*, No. CV 16-00083, 2017 WL 1169767, at *9 (W.D. Va. Mar. 29, 2017). In the complaint, plaintiff made the following allegations:

(1) the County historically granted permits as a matter of course and subjected applications to minimal review; (2) prior permits were granted to religious and secular organizations alike; (3) when local citizens and officials became aware of the [plaintiff's] application, the scheduled hearing was abruptly postponed; (4) the County then subjected [plaintiff's] application to an atypically thorough examination; (5) some County officials believed this heightened scrutiny was attributable to [plaintiff's] religious status and beliefs; (6) [plaintiff's] application satisfied state law requirements and the County's historical criteria, and; (7) there was a nontrivial amount of public anti–Muslim sentiment regarding the application, which was communicated by constituents to Board members before their vote."

*Id.* Noting that "the Court has before it only allegations, not evidence," the Court was bound at a motion to dismiss stage to take these allegations as true and draw all plausible inferences in favor of plaintiff. *Id.* at 1, 9. Therefore, the Court found that the "above facts support the conclusion that [plaintiff's] religion motivated the County's permit denial." *Id.*

*County of Culpeper* is distinguishable on several grounds. First, the Court here is bound by the summary judgment standard to look at the sufficiency of the evidence offered in support of CCBF's nondiscrimination claim, and need not take CCBF's allegations or bald conclusions as true. "[C]onclusory allegations . . . without factual support, are insufficient to defeat summary judgment." *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). Second, the plaintiff in *County of Culpeper* presented an as-applied challenge based on the County's permit denial, which requires a more particularized inquiry not presently before this Court. The Court notes once again that CCBF's facial challenge limits this Court's inquiry to the ordinance provisions themselves and events "leading up to the land use decision," rather than any application of the ordinance or Settlement Agreement to CCBF's particular circumstances and still pending application for the expansion of its facilities.

The other case CCBF cites, *Bethel World Outreach Ministries v. Montgomery Cty. Council*, likewise undermines its position. 706 F.3d 548 (4th Cir. 2013). In *Bethel*, plaintiff brought a facial challenge under the nondiscrimination provision and pointed to the County

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | | |

residents' opposition to plaintiffs' proposed large sanctuary as well as the sequence of events leading up to the County's adoption of the ordinance as evidence of discrimination. *Id.* at 559–60. The evidence showed that the County deferred plaintiffs' application for public water and sewer service while considering an amendment to the ordinance which would prohibit water and sewer services to private institutions in the zone. *Id.* at 559. The County adopted the proposed amendment and then denied plaintiffs' application. *Id.* The Court reasoned that such evidence "could certainly support an inference that the County took the measures it did to prevent [plaintiffs] from going forward with their building plans." *Id.* However, because plaintiffs "failed to put forth any evidence that the County took those measures because Bethel and Derwood are religious organizations." the court affirmed the district court's grant of summary judgment to the County on the nondiscrimination claim. *Id.* at 560.

As in *Bethel*, CCBF lacks sufficient evidence that the measures taken by the County as to the C/V Zone and the Wine Country Zones were grounded in bias towards religious institutions, rather than considerations of relevant zoning criteria. *See Bethel*, 706 F.3d at 560 (noting that the evidence showed that "the County and the residents involved in the process consistently expressed concern with the size of the proposed facilities, which they considered incompatible with the character of the agricultural reserve," rather than discriminatory animus). Thus, because there are no disputes of material fact, and the evidence presented fails to support CCBF's prima facie showing of discriminatory intent on the part of the County in enacting the relevant provisions of Ordinance No. 348. CCBF's claim for violation of the nondiscrimination provision of RLUIPA fails.

Therefore, summary judgment on CCBF's third and fourth causes of action is granted in favor of the County. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) ("Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to[his] case, and on which [he] will bear the burden of proof at trial.'") (quoting *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 805–06, (1999) and *Celotex*, 477 U.S. at 322)).

2. *Exclusion and Unreasonable Limitations under RLUIPA (Fifth and Sixth Causes of Action)*

CCBF brings its fifth and sixth causes of action under subsection (b)(3) of RLUIPA, which states:

"No government shall impose or implement a land use regulation that – (A) totally excludes religious assemblies from a jurisdiction, or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."

| |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside | |

42 U.S.C. § 2000cc(b)(3). The "unreasonable limitations" provision "prevents government from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction." *Bethel World Outreach Ministries*, 706 F.3d at 560. "[T]he purpose of this provision is not to examine restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate." *Church of Scientology*, 843 F.Supp.2d at 1377 (N.D. Ga.2012) (citing *Adhi Parasakthi Charitable, Med., Educ. & Cultural Soc'y of N. Am. v. Twp. of West Pikeland*, 721 F. Supp. 2d 361, 387 (E.D. Pa. 2010) and *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1238 (10th Cir.2010)); *see also Church of Our Savior v. City of Jacksonville Beach*, 69 F. Supp. 3d 1299, 1324–25 (M.D. Fla. 2014) ("[T]he focus of the Unreasonable Limitations provision is not on the treatment of a particular landowner, but religious entities in general.").

CCBF contends that the C/V Zone and Wine Country Zones "exclude and unreasonably limit religious assemblies." *Compl.* ¶¶ 102, 107. In its motion, CCBF argues that "[b]ecause churches are prohibited from locating in the 29.2 square miles that encompass the C/V Zone and WCCP Zones, churches have been totally excluded from a jurisdiction as prohibited by RLUIPA." *CCBF Cross-Mot.* 13. Central to CCBF's argument here is a determination that "jurisdiction" under § 2000cc(b)(3) means only the area covered by the challenged provisions of the County's zoning ordinance. In other words, CCBF urges the Court to interpret "jurisdiction" in this context as meaning only the C/V Zone and the Wine Country Zones. *See id.*

The Court cannot adopt CCBF's proposed interpretation. Although RLUIPA does not define "jurisdiction," courts consider the "geographical area covered by the ordinance" in applying the term in the context of a RLUIPA exclusion claim. *Elijah Grp., Inc. v. City of Leon Valley, Tex.*, No. CIV.A.SA08CV0907OGNN, 2009 WL 3247996, at *8 (W.D. Tex. Oct. 2, 2009), *rev'd on other grounds*, 643 F.3d 419 (5th Cir. 2011) ("As applied to a land use regulation like a zoning ordinance, 'jurisdiction' logically refers to the geographical area covered by the ordinance. The City's zoning ordinance applies to the entire City. Logically then, jurisdiction equates to the City.").

Here, the government in question is the County of Riverside and Ordinance No. 348 governs land use regulation in the County, which is the geographical area over which the County government exercises its authority. *See Black's Law Dictionary* (10th ed. 2014) (defining jurisdiction as "[a] geographic area within which political or judicial authority may be exercised."); *see also Redwood Christian Sch. v. Cty. of Alameda*, No. C-01-4282 SC, 2007 WL 781794, at *5 (N.D. Cal. Mar. 8, 2007) (interpreting "within a jurisdiction" to mean the entire County of Alameda); *Bethel World Outreach Ministries*, 706 F.3d at 560 (affirming summary judgment in favor of County on plaintiff's unreasonable limitations claim where "Bethel has failed to produce any evidence suggesting that religious organizations are left without a

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

reasonable opportunity to build elsewhere *in the County*.") (emphasis added); *Grace Church of Roaring Fork Valley v. Board of County Com'rs of Pitkin County, Colorado*, 742 F. Supp. 2d 1156, 1166 (D. Colo. 2010) ("To prove this claim, the plaintiffs must show that Pitkin County's land use regulations, as applied or implemented, have the effect of depriving Grace Church and other religious institutions or assemblies of reasonable opportunities to practice their religion, including the use of structures, *within the County*.") (emphasis added).

As noted by the Seventh Circuit in addressing the "substantial burden" provision of RLUIPA, "the ban on churches in [a particular] zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA. *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir.2007). Such reasoning applies equally in the context of an exclusion claim, where equating "jurisdiction" with only a zoning district would mandate that every zone covered by a government's land use ordinance permit religious assemblies and institutions. *Elijah Grp.*, 2009 WL 3247996, at *9 ("If jurisdiction equated to a zoning district, then every zoning ordinance that didn't permit churches in every zone would be a prima facie violation of the RLUIPA."). Such an interpretation would exempt religious institutions from all zoning laws, which is not the intent of RLUIPA. *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 348–49 (D.N.J. 2016) ("It is important to note that RLUIPA does not provide a religious assembly with immunity from zoning regulation."); *Hope Rising Cmty. Church v. Municipality of Penn Hills*, No. CV 15-1165, 2015 WL 7720380, at *4 (W.D. Pa. Oct. 28, 2015) ("RLUIPA's unreasonable limitations provision does not protect a religious institution from any and all limitations imposed by a zoning ordinance, only those which are an unreasonable limitation on religious practice.").

Without CCBF's preferred interpretation of "jurisdiction," it cannot prevail on its motion for summary judgment. As presented by the evidence submitted by the County, the County neither excludes nor unreasonably limits religious assemblies or institutions within its jurisdiction. The area governed by Ordinance No. 348 covers approximately 3,932,240 acres and includes 40 zoning classifications. *Prayvanh Decl.* ¶ 4. Of those 40 zoning classifications, 30 expressly allow churches with approval of a permit or plot plan. *Id.* Moreover, those 30 zoning classifications that allow churches with an entitlement cover approximately 95% of the zoned portion of the unincorporated County (the area covered by the County less the area within the jurisdiction of incorporated cities). *Id.* ¶ 5.

Therefore, because the undisputed evidence shows that such a large portion of the County is zoned to allow religious institutions, CCBF cannot meet its burden of showing that the County "totally excludes" or "unreasonably limits" religious assemblies in violation of RLUIPA. *See Redwood Christian Sch.*, 2007 WL 781794, at *5 (finding no evidence that the County's

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

regulations unreasonably limited religious assemblies where, although "not permitted to build at the Palomares Canyon site," plaintiff "operates a school at the Martin Site, also in Alameda County . . [and] has been granted several CUPs to make improvements to the Martin Site and would be eligible for a CUP at various other sites in the County where it might choose to move in the future."); *Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro, Wis.,* 734 F.3d 673, 680 (7th Cir. 2013), *abrogated on other grounds in Schlemm v. Wall,* 784 F.3d 362 (7th Cir. 2015) (finding no violation of the total exclusion provision where plaintiff "could construct a year-round Bible camp on thirty-six percent of the land in Oneida County."); *Truth Found. Ministries, NFP v. Vill. of Romeoville,* No. CV 15-7839, 2016 WL 757982, at *11 (N.D. Ill. Feb. 26, 2016) (finding that plaintiff had failed to establish a total exclusion claim where "the Village has presented uncontested evidence that in its twenty-four Districts, churches are only prohibited in 36.3% of the Village."); *Covenant Christian Ministries, Inc. v. City of Marietta, Ga.,* No. CV 06-1994 CC, 2008 WL 8866408, at *16 (N.D. Ga. Mar. 31, 2008) (no violation of the unreasonable limitation provision where "religious institutions are allowed to be located on approximately half of the property in the City."); *see also Bethel World Outreach Ministries,* 706 F.3d at 560 (requiring evidence demonstrating "that religious organizations are left without a reasonable opportunity to build elsewhere in the County."); *Elijah Grp.,* 2009 WL 3247996, at *9 ("Nothing in the RLUIPA or case law suggests a church is unreasonably limited just because it is excluded from a zoning district it prefers.").

Accordingly, CCBF's fifth and sixth causes of action fail as a matter of law. Summary judgment is granted in favor of the County.

## IV.   Conclusion

Based on the foregoing, the Court ORDERS as follows:
- The County's motion for summary judgment as to the entire Complaint, Dkt. # 28, is GRANTED in part and DENIED in part. The County's motion as to causes of action one through six on statute of limitations, ripeness and standing grounds is DENIED. The County's motion as to cause of action seven is GRANTED.

- CCBF's motion for partial summary judgment as to causes of action one, two and seven, Dkt. # 29, is DENIED. Pursuant to Fed. R. Civ. P. 56(f), the Court enters summary judgment on CCBF's first and second causes of action in favor of the County.

- The County's cross-motion for summary judgment as to causes of action three, four, five and six, Dkt. # 51, is GRANTED.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-259 PSG (DTBx) | Date | August 18, 2017 |
|---|---|---|---|

| Title | Calvary Chapel Bible Fellowship v. County of Riverside |
|---|---|

• CCBF's cross-motion for summary judgment as to causes of action three, four, five and six, Dkt. # 53, is DENIED.

Because summary judgment on all seven causes of action is entered in favor of the County, this order closes the case.

**IT IS SO ORDERED.**